IN THE UNITED STATES DISTRICT COURT FOR THE

DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| WILLIAM SCHNEIDER, | ) | |
| | ) | |
| Plaintiff, | ) | 8:99CV0315 |
| | ) | |
| v. | ) | |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |
| PAUL F. SEGER, KAREN M. SEGER, DOUGLAS W. MATSCHULLAT, and HELEN SUE MATSCHULLAT, | ) ) ) | |
| | ) | |
| Plaintiffs, | ) | 4:99CV3056 |
| | ) | |
| v. | ) | |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |
| TIMOTHY M. GRAY and MARGARET S. GRAY, | ) ) | |
| | ) | |
| Plaintiffs, | ) | 4:99CV3154 |
| | ) | |
| v. | ) | |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |
| LAZY HORSESHOE RANCH, | ) | |
| | ) | |
| Plaintiff, | ) | 4:99CV3153 |
| | ) | |
| v. | ) | |
| | ) | |
| UNITED STATES OF AMERICA, | ) | MEMORANDUM AND ORDER |
| | ) | |
| Defendant. | ) | |

This matter is before the Court on defendant's motion for partial summary judgment concerning the scope of federal easements and nature of interests conveyed on Indian lands (Filing No. 318 in 8:99CV0315; Filing No. 295 in 4:99CV3056; Filing No. 276 in 4:99CV3154; Filing No. 223 in 4:99CV3153) and on plaintiffs' cross-motion for partial summary judgment as to Category 8 - 1875 Act Easements (Filing No. 327 in 8:99CV0315; Filing No. 302 in 4:99CV3056; Filing No. 283 in 4:99CV3154; Filing No. 230 in 4:99CV3153). In addition, intervenor defendant Rails to Trails Conservancy ("RTC")filed a memorandum in support of the motion of defendant United States of America for partial summary judgment on public lands issues (Filing No. 320 in 8:99CV0315; Filing No. 297 in 4:99CV3056; Filing No. 278 in 4:99CV3154; Filing No. 225 in 4:99CV3153).[1] Having reviewed the motions, the parties' briefs and evidentiary submissions, and the applicable law, the Court finds the defendants' motion should be denied and the plaintiffs' motion should be granted.

## STANDARD OF REVIEW

Summary judgment is proper if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates no genuine issue of material fact exists and the moving party is

---

[1] The Court will cite solely to the filings in Case No. 8:99CV0315 throughout this memorandum and order. Any reference to a filing in Case No. 8:99CV0315 applies to the corresponding filings in the other class representatives' cases.

entitled to judgment as a matter of law.  Fed. R. Civ. P. 56©); *Philip v. Ford Motor Co.*, 328 F.3d 1020, 1023 (8th Cir. 2003).  The proponent of a motion for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).  The proponent need not, however, negate the opponent's claims or defenses. *Id*. at 324-25.

In response to the proponent's showing, the opponent's burden is to "come forward with 'specific facts showing that there is a genuine issue for trial.'"  *Matsushita Elec. Indus. Co., v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)).  A "genuine" issue of material fact is more than "some metaphysical doubt as to the material facts." *Id*. at 586.  "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  "If the evidence is merely colorable . . . or is not significantly probative . . . summary judgment may be granted."  *Id*. at 249-50 (citations omitted).

**DISCUSSION**

In this class action, class representatives ("plaintiffs") are seeking compensation from the United States ("defendant" or "government") for alleged Fifth Amendment takings of their property interests in connection with the 1983 enactment of 16 U.S.C. § 1247(d) ("Rails-to-Trails Act" or "Act").[2]  The parties have identified twenty-eight categories based on the source of the railroads' interests, and classified the parcels under these categories.  At issue in this memorandum and order are the 143 parcels that the parties have classified as Category 8 parcels.  Category 8 parcels are those parcels over which the railroads acquired easements via the General Railroad Right-of-Way Act of 1875 ("1875 Act"), 43 U.S.C. § 934-939.  The

---

[2] 16 U.S.C. § 1247(d) states in pertinent part:

Consistent with the purposes of that Act, and in furtherance of the national policy to preserve established railroad rights-of-way for future reactivation of rail service, to protect rail transportation corridors, and to encourage energy efficient transportation use, in the case of interim use of any established railroad rights-of-way pursuant to donation, transfer, lease, sale, or otherwise in a manner consistent with this chapter, if such interim use is subject to restoration or reconstruction for railroad purposes, such interim use shall not be treated, for purposes of any law or rule of law, as an abandonment of the use of such rights-of-way for railroad purposes. If a State, political subdivision, or qualified private organization is prepared to assume full responsibility for management of such rights-of-way and for any legal liability arising out of such transfer or use, and for the payment of any and all taxes that may be levied or assessed against such rights-of-way, then the Board shall impose such terms and conditions as a requirement of any transfer or conveyance for interim use in a manner consistent with this chapter, and shall not permit abandonment or discontinuance inconsistent or disruptive of such use.

plaintiffs, or the plaintiffs' predecessors in title, later obtained title to the Category 8 parcels pursuant to homesteading statutes.  These landowners acquired their parcels of land to the railroads' easements.

The passage of the Rails-to-Trails Act gave rise to this class action.  The Act "provides for the preservation of discontinued railway rights-of-way, by 'banking' the rights-of-way for possible future reactivation" and "authorizes interim use of the rights-of-way as recreational trails."  *Hash v. United States*, 403 F.3d 1308, 1311 (Fed. Cir. 2005) ("*Hash II*").  "Congress created the process of railbanking to preserve, where possible, unused railroad rights of way for future rail service by temporarily converting the rights of way into recreational trails until they are again needed for rail purposes."  *Fletcher v. Burlington Northern and Santa Fe Ry. Co.* 474 F.3d 1121, 1123 (8th Cir. 2007) (citing *Preseault v. Interstate Commerce Comm'n*, 494 U.S. 1, 5-7 (1990).

Plaintiffs seek summary judgment in their favor with respect to the Category 8 parcels, arguing that the conversion of 1875 Act railroad easements to recreational trails constitutes a Fifth Amendment taking and entitles them to just compensation.  Plaintiffs claim they are entitled to summary judgment on two grounds.  First, plaintiffs claim the Court is bound by the Federal Circuit Court of Appeals' decision in *Hash II*, which

found that a rails-to-trails conversion of an 1875 Act easement constituted abandonment of the easement and entitled the owners of the underlying land parcels to just compensation. Second, plaintiffs claim recreational trail use exceeds the scope of the original 1875 Act easements.

The government also seeks summary judgment in its favor with respect to the Category 8 parcels. Defendant's principal argument is that the scope of the 1875 Act easements is sufficiently broad to encompass recreational trail use. The government disagrees with plaintiffs' interpretation of *the Hash II* decision and rejects plaintiffs' assertion that *Hash II* is binding on this Court.

In *Hash II*, the Federal Circuit examined the Rails-to-Trails Act effect on various parcels of land, including those that were burdened by 1875 Act easements. Like the plaintiffs in the present action, the *Hash* plaintiffs sought compensation from the government for Fifth Amendment takings associated with the Rails-to-Trails Act. Like the Category 8 parcels in the present matter, the Category 1 parcels in the *Hash* cases were those parcels upon which the railroads obtained an 1875 Act easement prior to the land owners obtaining title under homesteading statutes. *Hash v. United States*, Case No. CV 99-324-S-MHW, 2001 WL 35986188, at *3 (D. Idaho Nov. 27, 2001) ("*Hash I*"). In *Hash I*, the District Court for the District of Idaho determined that

-6-

the Category 1 parcel owners did not own a vested property interest in the 1875 Act rights-of-way because "the United States held the reversionary interest in the subject rights-of-way."

The Category 1 plaintiffs appealed to the Federal Circuit, which reversed the district court, determining the United States did not hold a reversionary interest and that "the land of Category 1 is owned in fee by the landowners, subject to the railway easement."  *Hash II*, 403 F.3d at 1318.  The Federal Circuit went further, holding:

> On the railway's abandonment of its right-of-way these owners were disencumbered of the railway easement, and upon conversion of this land to a public trail, these owners' property interests were taken for public use, in accordance with the principles set forth in the *Preseault* cases.  On remand the district court shall determine just compensation on the conditions that apply to these landowners.[3]

*Id*. *See Preseault v. Interstate Commerce Comm'n*, 494 U.S. 1 (1990) ("*Presault I*") (upholding the constitutionality of the Rails-to-Trails Act because any takings occasioned by the Act are compensable under the Tucker Act) and *Preseault v. United States*, 100 F.3d 1525 (Fed. Cir. 1996) ("*Presault II*") (holding that the scope of the easements granted for maintenance and operation of

---

[3] It is the above passage and its implications that give rise to the conflict between the plaintiffs and the defendant in the present matter.

the railroad did not encompass the use of easements for public trails). The government filed a petition for rehearing, arguing *inter alia* that the Federal Circuit "panel erroneously reached the question of takings liability" and "reached a question not addressed by the district court or the parties." *Hash v. United States*, No. CV-99-324-S-MHW, 2007 WL 1309548, at *5 (D. Idaho Feb. 1, 2007) ("*Hash III*"). The panel declined to rehear the case. *Id.*

On remand before the Idaho district court, the government made the same arguments, claiming the question of liability had not been before the Federal Circuit in *Hash II*, and instead, the Federal Circuit should have limited its analysis to the question of who held the reversionary interest in the 1875 Act rights-of-way. The district court rejected the government's argument and declined to address the liability, finding that the decision in *Hash II was* a mandate. *Id.* at *6.

Only two other federal courts have considered the effect of the decision in *Hash II* with respect to property owners whose parcels of land were burdened by 1875 Act easements. In both instances, the courts determined that *Hash II* was binding authority and determined the property owners were entitled to compensation for Fifth Amendment takings. *See Blendu v. United*

*States*, 75 Fed. Cl. 543 (2007) and *Ellamae Phillips Co. v. United States*, 77 Fed. Cl. 387 (2007).[4]

Plaintiffs argue that the Court is bound by the Federal Circuit's decision in *Hash II*. The Court's jurisdiction in this matter is founded in the 28 U.S.C. § 1346(a)(2) ("Little Tucker Act").[5] The Little Tucker Act provides the necessary waiver of sovereign immunity for the plaintiffs to sue the United States for monetary damages under this Fifth Amendment takings theory. United States District Courts and the United States Court of Federal Claims have original, concurrent jurisdiction over matters arising under the Little Tucker Act. *Id.* "Claims for less than $10,000 ( i.e., Little Tucker Act claims) may be brought either in a federal district court or in the United States Claims Court." *United States v. Hohri*, 482 U.S. 64, 72 (1987)(citing § 1346(a)(2)). "These claims, so long as they are

---

[4] It must be noted that both of these cases were before the United States Court of Claims, which is bound to accept as binding precedent all published decisions of the Federal Circuit Court of Appeals. *See West Seattle General Hosp., Inc., v. United States,* 1 Fed. Cl. 745 (1983).

[5] The Little Tucker Act provides, in pertinent part:

The district courts shall have original jurisdiction, concurrent with the United States Court of Federal Claims, of:  [a]ny other civil action or claim against the United States, not exceeding $10,000 in amount, founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort . . . .

28 U.S.C. 1346(a)(2).

not related to federal taxes, also are appealable only to the Federal Circuit. *Id*. (citing §§ 1295(a)(2),(3)). "A motivating concern of Congress in creating the Federal Circuit was the 'special need for nationwide uniformity' in certain areas of the law." *Id.* Whether or not the Court is bound to follow the Federal Circuit's decision in *Hash II*, the Court finds the decision is certainly highly persuasive.

The issue then becomes what is the nature and scope of the 1875 Act easements. Defendant argues that the easements were not limited to active railroad use, and were broad enough to encompass preservation through railbanking and interim use as public recreational trails. Plaintiffs disagree arguing that the 1875 Act was an easement for railway purpose and any conversion from that the original purpose constitutes a Fifth Amendment taking. As the Court has stated in a previous order in this matter, abandonment is not the defining issue in determining whether a rails-to-trails conversion effects a taking (Filing No. 216 at 13). Instead, the issue is whether the government's discontinuance of active railroad use and authorization for the trail to be used as a recreational trail constitutes a new and unauthorized use of the 1875 Act easements. *See Presault II,* 100 F.3d at 1549. The Court finds that it does. Thus, while there is no question that the government is permitted to prevent reversion of discontinued rights-of-way and to permit the use the

-10-

rights-of-way as recreational trails, the government may still be liable for a taking.  *Hash II*, 403 F.3d at 1311.  Here, the scope of the 1875 Act easements was not sufficiently broad to encompass future use as recreational and linear park usage.  Like the other courts that have addressed this issue, the Court finds the owners of the Category 8 parcel are entitled to just compensation for a Fifth Amendment taking of their private property interests.  Accordingly,

　　　　IT IS ORDERED:

　　　　1)   Defendant's motion for partial summary judgment concerning the scope of federal easements and nature of interests conveyed on Indian lands (Filing No. 318 in 8:99CV0315; Filing No. 295 in 4:99CV3056; Filing No. 276 in 4:99CV3154; Filing No. 223 in 4:99CV3153) is denied; and

　　　　2)   Plaintiffs' cross-motion for partial summary judgment as to Category 8 - 1875 Act Easements (Filing No. 327 in 8:99CV0315; Filing No. 302 in 4:99CV3056; Filing No. 283 in 4:99CV3154; Filing No. 230 in 4:99CV3153) is granted.

　　　　DATED this 15th day of January, 2008.

　　　　　　　　　　　BY THE COURT:

　　　　　　　　　　　/s/ Lyle E. Strom
　　　　　　　　　　　_____
　　　　　　　　　　　LYLE E. STROM, Senior Judge
　　　　　　　　　　　United States District Court